IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re CULVERHOUSE, INC. | ) | |
| | ) | BK CASE NO. 03-12288-WRS |
| Debtor. | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| CULVERHOUSE, INC., Debtor | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | CASE NO. 1:05-cv-345-MEF |
| v. | ) | [WO-PUBLISH] |
| | ) | |
| STATE OF ALABAMA | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Debtor Culverhouse, Inc. ("Culverhouse") appeals the Bankruptcy Court's denial of its objection to a claim asserted by the Alabama Department of Revenue ("ADR"). Culverhouse challenges the Bankruptcy Court's determination that ADR was correct in its assessment of the Alabama use tax to Culverhouse's lease of trucks and trailers to a Georgia company. After carefully reviewing the parties' submissions, the Court finds, for the reasons set forth below, that the Bankruptcy Court's order is due to be REVERSED, and this cause is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.

### STANDARD OF REVIEW

District courts function as appellate courts in reviewing the decisions of bankruptcy courts. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). "Factual findings by the

bankruptcy court are reviewed under the limited and deferential clearly erroneous standard." *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992). "In contrast to the deference given to factual findings, this court examines the bankruptcy court's legal conclusions de novo." *In re Terry Mfg. Co., Inc.*, 332 B.R. 630, 632 (M.D. Ala. 2005). In performing this review, district courts do not have the ability to make independent findings of fact. *Sublett*, 895 F.2d at 1384. "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court must remand the case to the bankruptcy court for the necessary factual determination." *Id.* (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987)).

## FACTS AND PROCEDURAL HISTORY

Culverhouse is an Alabama corporation that specializes in the transportation of household goods. The company runs all of its operations from its sole place of business in Ariton, Alabama. Sometime in late 2002, ADR conducted an audit of Culverhouse's activities running from June 1, 1998 through September 30, 2002. During this period, Culverhouse purchased twenty-one Kenworth trucks from Kenworth of Dothan, Inc., a dealer located in Alabama, and twenty-two trailers from vendors in Georgia. The trucks were driven out of Alabama within seventy-two hours, and both the tractors and trailers were registered in the state of Oklahoma. Licensure in Oklahoma allowed Culverhouse to take advantage of that state's apparent lack of an applicable sales or use tax to avoid paying any taxes on the vehicles.

Shortly after these acquisitions, Culverhouse leased the trucks and trailers—which were then stationed in Columbus, Georgia—to Burnham Service Company, Inc. ("Burnham"), a corporation with its principal place of business in Georgia. This arrangement was in accord with the common practice of the two companies whereby Culverhouse would provide the trucks, trailers, and drivers necessary for Burnham to haul goods. While Burnham occasionally dispatched trucks directly, Culverhouse's Alabama office more often directed the transportation activity of the vehicles and incurred virtually all of the operating costs associated with passage. Burnham compensated Culverhouse for these services based on a schedule provided by contract. Although the companies performed their transportation services throughout the United States, the state of Alabama played a significant part in their operations. In addition to the control exerted over the vehicles by Culverhouse's Ariton office, many of Culverhouse's drivers were from Alabama, and approximately thirty percent of the trucks' mileage was traveled within the state.

ADR examined this arrangement and issued an audit report on January 3, 2003 that imposed the tax liability that has become the basis of these proceedings. On October 1, 2003, Culverhouse filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. ADR filed a timely proof of claim with the Bankruptcy Court for use taxes in the amount of $68,310.27 on November 4, 2003. This sum consisted of $45,287.02 in taxes, $12,759.85 in interest, and civil penalties of $10,263.40. On April 16, 2004, Culverhouse filed an objection to ADR's claim.

3

On July 15, 2004, the Bankruptcy Court held a hearing on this matter and, on October 29, 2004, issued a written opinion that concluded that ADR's claim was to be allowed except for the portion made up of civil penalties. In its resolution of these issues, the Bankruptcy Court found that the lease executed by Culverhouse triggered use tax liability even though the vehicles were located in Georgia at the time of the lease. In the alternative, the Bankruptcy Court concluded that Culverhouse asserted sufficient control over the trucks and trailers during their subsequent journeys into Alabama to justify ADR's exaction of use taxes. After the Bankruptcy Court denied its motion for reconsideration, Culverhouse subsequently filed its timely notice of appeal to bring the cause before this Court.

## DISCUSSION

On appeal, Culverhouse argues that the Bankruptcy Court erred when it allowed ADR's claim for the use tax. Culverhouse contends that the first use of the property was the lease of the rolling stock to Burnham and that the situs of this lease for the purposes of the use tax was Georgia. Further, Culverhouse would have the Court find that such a use brought the property within a "safe harbor" provision of the Alabama Administrative Code that exempts property first used outside of the state from the use tax. ADR and the Bankruptcy Court have read the statute not to require the physical presence of the property in the state as long as decisions concerning the property are made in Alabama. The litigants agree that the initial usage of the vehicles occurred when Culverhouse leased the trucks and trailers, which were located in Georgia at the time, to Burnham. Thus, the disputed basis for

4

use tax liability in this case is whether an Alabama company's exertion of control over property located in another state comes within the reach of Alabama's use tax.

"Any exercise of statutory interpretation begins first with the language of the statute in question." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226 (11th Cir. 2004). As an elementary interpretive rule, courts read a "statute using the normal meaning of its words" absent "a clearly expressed legislative intent to the contrary." *Horton Homes, Inc. v. United States*, 357 F.3d 1209, 1211-12 (11th Cir. 2004) (quoting *Consol. Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir. 1997)). "In addition to the 'particular statutory language at issue,' federal courts also must consider 'the language and design of the statute as a whole' to determine 'the plain meaning of the statute.'" *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1278 (11th Cir. 2005) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

The Alabama statute reads: "An excise tax is hereby imposed on the storage, use or other consumption in this state of any automotive vehicle or truck trailer . . . purchased at retail . . . for storage, use or other consumption in this state." Ala. Code § 40-23-61(c). Under the plain language of the Alabama Code, the use tax requires four separate elements: (1) the "storage, use or other consumption" (2) "in this state" (3) of property "purchased at retail" (4) "for storage, use or other consumption in this state." *Id*. The statute defines "use" broadly to include "[t]he exercise of any right or power over tangible personal property incident to the ownership of that property, or by any transaction where possession is given,

except that it shall not include the sale of that property in the regular course of business." Ala. Code § 40-23-60(8).

Of the four elements, the first and third are undisputedly established in this case. The lease of the trucks and trailers from Culverhouse to Burnham is a use under the meaning of the statute, and Culverhouse purchased the vehicles at retail. *See Rabren v. Radio Corp. of Am.*, 252 So. 2d 55 (1971). Thus, the Court must examine whether the first usage of the property satisfied the requirement that the use occur "in this state." The Bankruptcy Court concluded that it did and found that the use tax was properly imposed under these circumstances because Culverhouse's decisionmakers were located in Alabama when the lease was executed even though the trucks and trailers were not. Under this reading, only "[t]he exercise of any right or power" need occur "in this state" for the use tax to apply.

The Court finds it far more reasonable to interpret the statute to require the property to be located in the state of Alabama at the time it is put into service. In the Court's view, the expansive scope of the statute's definition of use was meant to cast a wide net over the potential actions taken with regard to taxable property, not to change the breadth of the statute's geographic coverage. This reading concludes that the tax applies to property actually utilized in the state rather than decisions made in Alabama relating to property found throughout the rest of the nation. The Court therefore construes the phrase "in this state" to mandate the physical presence of the vehicles in Alabama. Such an interpretation follows the most natural direction of the statute's language and is also consistent with Alabama case

law and the purpose and intent of the act.

Alabama courts have repeatedly acknowledged the importance of the taxable property's presence in the state.  As the Alabama Supreme Court has stated: "a use tax is not a tax on revenues generated from carrying on interstate business . . . but is an excise tax imposed upon the privilege of storing, using, or otherwise consuming tangible personal property purchased at retail outside the state and *domiciled in the state*."  *Ex parte Fleming Foods*, 648 So. 2d 577, 579 (Ala. 1994) (emphasis added).  In considering the use tax's constitutionality, the *Fleming* court concluded that the presence of the vehicles in question within the state provided the substantial nexus necessary to sustain the statute.  *Id*.  Likewise, in *Paramount-Richards Theatres v. State*, 39 So. 2d 380, 384 (Ala. 1949), the court found the use tax statute restricted to situations where "the act of transportation ends and the property comes to rest in this state for use or consumption."  *See also State v. Hanna Steel Corp.*, 158 So. 2d 906, 908 (Ala. 1963).  And Alabama's intermediate appellate court has recognized that "the use tax statutes apply to goods purchased at retail outside of the state and brought *into the state* for use by the purchaser."  *State v. Marmon Indus., Inc.*, 456 So. 2d 798, 800-01 (Ala. Civ. App. 1984) (emphasis added).  In sum, what these cases assume, the Court must state explicitly today—the use tax statute applies only to property located in Alabama.  Contrary to the Bankruptcy Court's conclusion, this prerequisite is not judicially created but instead reflects the statutory command that the "storage, use or other consumption" of the property occur "in this state."

To implement the statute in this way is consistent with the design and purpose of Alabama's tax system. "In the enactment of the sales and use tax statutes, it was the underlying purpose and intent of the legislature to impose a tax upon the 'ultimate consumer' of the goods purchased." *Id*. "The sales tax applies to retail sales or purchases within the state, and the use tax applies to retail sales or purchases made outside the state and brought into the state for use by the purchaser." *State v. Thiokol Chem. Corp.*, 246 So. 2d 447, 448 (Ala. Civ. App. 1970). Through this scheme, Alabama ensures a level playing field for its merchants by preventing Alabama residents from leaving the state to acquire tax-free products elsewhere. *See State v. Advertiser Co.*, 59 So. 2d 576, 577 (Ala. 1952). In addition, non-resident consumers are encouraged to enter the state to make a purchase because they can avoid paying sales tax in Alabama by removing the property to their state of residence. This mechanism achieves a balance that benefits Alabama retailers by allowing them to compete with out-of-state businesses without adverse taxation implications to consumers.

The Bankruptcy Court's construction of the statute would fundamentally alter Alabama's carefully erected tax structure. In place of a system designed to place a single tax on all property used in the state would exist a tax related to the business decisions of Alabama residents. Far from ensuring a level playing field, such a tax would unduly burden Alabama businesses and create a complicated scheme whereby these entities would be forced to account for all assets disbursed throughout the nation. Alabama does provide a credit against its use tax for sales or use taxes paid to other states before the property enters the

state.  Ala. Code § 40-23-65.  And while most states impose some form of taxation on property purchased at retail, taxpayers would still have to make up the difference between the varied tax rates as they would receive a credit from Alabama for only those amounts actually paid to other states.  *Id.*  Under this regime, the focus of the use tax would shift from tangible property located in Alabama to the decisions made by Alabama residents affecting property stationed across the country.  In the Court's view, the Alabama Legislature did not intend to erect such a convoluted and far-reaching system.  Thus, the most natural interpretation of the phrase "in this state" necessitates the physical presence of the property in Alabama at the time of its relevant utilization.

Here, the parties have agreed that the use at issue is the lease of the rolling stock from Culverhouse to Burnham and that the trucks and trailers were located in Georgia at the time of the transaction.  The situs of this lease for the purposes of the use tax is the physical location of the property, not where the taxpayer made decisions concerning the property.  *See Rabren*, 252 So. 2d at 60.  Consequently, ADR cannot premise use tax liability on this activity because the vehicles were located in Georgia and thus were not utilized within Alabama.  The location of the property at the time of its use was not "in this state," and the Culverhouse-Burnham lease therefore falls beyond the reach of the Alabama use tax statute.

The question now before the Court is whether Culverhouse may be held liable for its subsequent use of the trucks and trailers in Alabama.  After completing the lease with Burnham, the evidence suggests that Culverhouse continued to exert some degree of control

over the vehicles, part of which led to significant use in Alabama.  The Bankruptcy Court considered these post-lease activities in conjunction with the lease itself and found them sufficient to uphold ADR's exaction of the use tax.

In reaching this conclusion, the Bankruptcy Court seems to have disregarded the fourth factor in the use tax analysis, which requires the vehicles to be purchased "for storage, use or other consumption in this state."  Approximately one-half of the states that impose a use tax have statutes containing similar language intended to "confine their use taxes to personal property purchased for use within the state."  Jerome R. Hellerstein & Walter Hellerstein, *State Taxation* ¶ 16.03 (3d ed. 2002).  "As a consequence, such states usually do not apply their use tax to goods purchased for use in other states but subsequently brought into the state for storage, use, or consumption there."  *Id*.  As is done by many other states, Alabama further elucidates this intent requirement through administrative regulation:

> Where the owner of tangible personal property has purchased such property for use outside of Alabama and has, in fact, used it outside of Alabama, no use tax will be due by the owner because of later storage, use or consumption of it in Alabama.  The proof of a real and substantial use of the property in another state shall rest upon the purchaser.

Ala. Admin. Code § 810-6-5-.25.  This provision limits the use tax's applicability to those situations in which property is intended for use in Alabama by examining its initial real and substantial employment.

It is important at this point to note that this regulation has a similar focus as does that of an exemption to the sales tax.  The sales tax does not apply where a purchaser removes a

vehicle from the state within seventy-two hours of purchase for "first use outside Alabama." Ala. Code § 40-23-2(4).  The operative language in both exceptions concentrates on an initial use of the property outside the state.  Reading these clauses together, it would seem that if Culverhouse has satisfied the seventy-two hour drive out exemption by making a first use outside the state, the same action would possibly be considered a "real and substantial use . . . in another state" for the purposes of the use tax.  The parties agree that the triggering event in the taxation analysis was the lease of the trucks and trailers to Burnham, and as such, Culverhouse could have been eligible for this exception.  If so, the fact that the trucks and trailers subsequently returned to Alabama would not affect Culverhouse's tax liability.

The Bankruptcy Court's opinion did not consider this possibility.  Instead, that court appears to have placed too much weight on what are Culverhouse's obvious contrivances to avoid taxation.  The court emphasized the complementary nature of the sales and use taxes and reasoned that Culverhouse should be liable for one or the other as no taxes were paid to any other state.  Under normal circumstances, Culverhouse would have paid sales or use tax when it registered the trucks and trailers in Oklahoma.  The Alabama statutes and the exceptions thereto seem to be based on this assumption and do not consider what should happen where a state imposes no tax.  However, the fact that Oklahoma's taxation scheme apparently allowed Culverhouse to take advantage of both states' tax structures in order to completely avert any payment does not affect Culverhouse's ultimate legal obligations under the Alabama statutes.  The exceptions to these taxes do not contain a requirement that the

purchaser pay another state's tax before a taxpayer becomes eligible for their benefits.

In conclusion, the Court has determined that the Alabama use tax statute mandates the fulfillment of four essential conditions before it may be imposed.  Of these, the requirement that the use occur "in this state" necessitates the physical presence of the property within the state of Alabama at the time of relevant utilization.  Also, the statute contains an intent element, which requires property to be purchased "*for* storage, use or other consumption in this state."  Ala. Code § 40-23-61(c) (emphasis added).  This provision, as further defined by the Alabama Administrative Code, exempts from taxation all property put to a real and substantial use outside the state before entering Alabama.  Accordingly, the Bankruptcy Court erred in applying the tax to Culverhouse's use of the vehicles when they were not located within the state of Alabama and by failing to consider whether Culverhouse employed the vehicles in a real and substantial use outside the state before directing their return to Alabama.  Because the Bankruptcy Court did not make the necessary factual findings on the latter issue, this cause must be remanded for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons discussed above, the Bankruptcy Court's ruling is REVERSED, and this case is REMANDED to the Bankruptcy Court for proceedings consistent with this opinion.  All other pending motions are DENIED AS MOOT.

Done this 22nd day of August, 2006.

/s/ Mark E. Fuller

CHIEF UNITED STATES DISTRICT JUDGE

12